D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JASMINE CAMPBELL,

                Plaintiff,

    -against-

The CITY OF NEW YORK, JAVIER O.
MUNOZ, and JOHN DOE,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-7201 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Jasmine Campbell brings this action against the City of New York ("the City") and two New York City Police Officers—Javier O. Munoz and John Doe—in both their individual and official capacities. (Compl. (Dkt. 1).) Plaintiff asserts claims of false arrest, false imprisonment, reckless investigation, and municipal liability pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. (Id. ¶¶ 21-56.) Defendants move for summary judgment on all grounds. (Mot. for Summ. J. (Dkt. 27).) For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

I.    BACKGROUND

   A.    Facts

The court constructs the following statement of facts from the parties' Local Rule 56.1 statements and the admissible evidence they submitted. Except as otherwise noted, the following facts are undisputed. Where facts are in dispute, the court notes the dispute, and credits Plaintiff's version of the particular fact if it is supported by record evidence. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018).

1

On February 26, 2014, Plaintiff was driving a sedan her mother had rented. (Defs. Rule 56.1 Statement ("Defs. 56.1") (Dkt. 29) ¶ 2; Pl. Rule 56.1 Statement ("Pl. 56.1") (Dkt. 32) ¶ 2.) Plaintiff picked up her friend Carnell Hinds from his home in Brooklyn at approximately 9:25 P.M., and he sat in the passenger seat of the vehicle. (Defs. 56.1 ¶¶ 3-4; Pl. 56.1 ¶¶ 3-4.) The two were on their way to a restaurant when Plaintiff pulled over into a legal parking space on the side of the road to search for directions on her telephone. (Defs. 56.1 ¶¶ 5-6; Pl. 56.1 ¶¶ 5-6.) Defendant Javier Munoz, then a New York City Police Department ("NYPD") officer, observed the parked car with Plaintiff and Hinds inside it. (Defs. 56.1 ¶ 8; Pl. 56.1 ¶ 8.) He approached the car along with his partner, Officer Jay Rivera. (Defs. 56.1 ¶ 11; Pl. 56.1 ¶ 11). Neither was in uniform. (Tr. of Oct. 27, 2017, Dep. of Jasmine Campbell, ("Pl. Dep.") (Dkt. 31-5) at 47:14-18.)

The parties dispute what Munoz observed inside the car. According to Defendants, Munoz saw marijuana in the center cup holder of the vehicle in public view. (Defs. 56.1 ¶ 12.) He also observed Hinds rolling a marijuana cigarette with both hands. (Defs. 56.1 ¶ 10.) Plaintiff claims that there was not marijuana in the center cup holder of the car or anywhere else in public view. (Pl. 56.1 ¶¶ 12, 15.) Plaintiff was not paying attention to Hinds while they were parked (Defs. 56.1 ¶ 7; Pl. Dep. at 36:2-5), but Hinds asserts that he "was not rolling a marijuana cigarette, and there was not any marijuana in public view" (Decl. of Carnell Hinds ("Hinds Decl.") (Dkt. 31-2) ¶ 2). Hinds does state that he hid a small bag of marijuana in the cup holder next to the passenger seat where he was sitting, but maintains that the marijuana was not in public view. (Hinds Decl. ¶ 4.) Plaintiff states that she never gave Hinds permission to "bring, leave, smoke, or roll any marihuana in [her] mother's car." (Decl. of Jasmine Campbell ("Pl. Decl.") (Dkt. 31-1) ¶ 2.)

2

Rivera ordered Hinds to step out of the car, and, during a search of his person, recovered a marijuana cigarette from his pocket. (Defs. 56.1 ¶¶ 13-14; Pl. 56.1 ¶¶ 13-14.) Plaintiff relates the following interaction between herself and Munoz:

> Officer Munoz . . . stuck his head inside of the car, looked at my breasts, and asked me if I had anything under that. I said that I did not have anything on under my sweater but a bra. Police Officer Munoz smiled and asked me if I wanted to show him something. Officer Munoz looked me in the eye, and then looked at my breasts again as he asked the question. I told the Police Officer that I did not have anything to show him. My impression of Officer Munoz—based on his questions and conduct—was that he wanted me to show him my breasts.

(Pl. Decl. ¶ 6.) Plaintiff reports that Munoz then asked her to get out of the car, and that she did so with her hands up. (Id. ¶ 7; Pl. Dep. 37:6-8.)

Neither Plaintiff nor Hinds gave either officer permission to search the vehicle. (Pl. Decl. ¶ 9; Hinds Decl. ¶ 7.) Munoz did search the car, however, and Defendants claim that he recovered marijuana from the center cup holder and from the driver's seat of the car. (Defs. 56.1 ¶ 15.) Plaintiff insists that no marijuana was recovered from either the center cup holder or the driver's seat of the car, and denies ever possessing marijuana. (Pl. 56.1 ¶¶ 15, 28.) Hinds informed the officers at the scene, and has repeated since, that all marijuana recovered from the car or from his person belonged to him and not to Plaintiff. (Id. ¶ 28; Hinds Decl. ¶ 8.) Both Plaintiff and Hinds were arrested. (Defs. 56.1 ¶¶ 16, 20-21; Pl. 56.1 ¶¶ 16, 20-21; Hinds Decl. ¶ 9.) Plaintiff was "crying uncontrollably" while being handcuffed. (Defs. 56.1 ¶ 17; Pl. 56.1 ¶ 17.) Defendants claim she pulled her hands away while being handcuffed (Defs. 56.1 ¶ 18), but Plaintiff denies doing so (Pl. 56.1 ¶ 18).

Other NYPD officers had arrived by this time, and they transported Plaintiff and Hinds to the 75th Precinct for processing. (Defs. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) A Field Test at the Precinct confirmed that the substance allegedly removed from Plaintiff's car was marijuana. (Defs. 56.1

3

¶ 24.) After being transported, Plaintiff called her mother, Jacqueline Robinson, and told her that Munoz had impliedly asked her to show him her breasts. (Pl. Decl. ¶ 13; Decl. of Jacqueline Robinson ("Robinson Decl.") (Dkt. 31-3) ¶ 3.) Robinson came to the Precinct and spoke to Munoz. (Robinson Decl. ¶ 6.) Plaintiff alleges that, after this conversation, Munoz told her he was going to keep her at the Precinct—and that she was not going to receive a Desk Appearance Ticket—"because [she] had been telling [her] mother lies." (Pl. Dec. ¶¶ 14, 15.) She was in fact kept in the Precinct overnight, and did not receive a Deck Appearance Ticket. (Pl. Dep. at 69:13-70:1.) Hinds, on the other hand, was given a Desk Appearance Ticket and allowed to leave that evening. (Hinds Decl. ¶ 10.)

Defendants provided Arrest and Complaint Reports regarding this incident, both of which purport to have been completed by Munoz on February 26, 2014. (NYPD Arrest Report ("Arrest Report") (Dkt. 28-5); NYPD Compl. Report ("Compl. Report") (Dkt. 28-6).) Both reports state that there was marijuana in public view in the vehicle. (See Arrest Report at 1; Compl. Report at 2.) The Complaint Report further states, inter alia, that Munoz observed Plaintiff sitting in a car with loose marijuana on the driver seat and a bag of marijuana in public view. (Compl. Report at 2.) Munoz also informed the Kings County District Attorney's Office that he saw Plaintiff in possession of marijuana that was "visible to passers-by." (King's Cty. Criminal Ct. Compl. ("Criminal Compl.") (Dkt. 28-8).)

Plaintiff was charged with Resisting Arrest, Criminal Possession of Marihuana in the Fifth Degree, and Obstruction of Governmental Administration. (Defs. 56.1 ¶¶ 16, 26; Pl. 56.1 ¶ 23.) The criminal charges against Plaintiff were dismissed on May 9, 2014. (Defs. 56.1 ¶ 29; Pl. 56.1 ¶ 29.) Plaintiff alleges that she told City employees about Munoz's request to see her breasts on several occasions: during the pendency of the criminal case, during the criminal

4

proceedings in court, and during two depositions in 2014 and 2017, respectively. (Pl. Decl. ¶ 17.)

B. Procedural History

Plaintiff filed her Complaint against Defendants on December 31, 2016. (Compl. (Dkt. 1).) Defendants did not move to dismiss, and answered the Complaint on June 16, 2017. (Answer (Dkt. 9).) Discovery proceeded before Magistrate Judge Steven M. Gold. Upon the close of discovery, and with permission of the court, Defendants filed their fully briefed motion for summary judgment on May 7, 2018. (See Mot. for Summ. J.)

Defendants make five arguments. First, Defendants argue that Plaintiff's false arrest and malicious prosecution claims fail because there was probable cause for her arrest and prosecution. (Mem. in Support of Mot. for Summ. J. ("Mem.") (Dkt. 30) at 5-11.) Second, Defendants contend that the police officers are entitled to qualified immunity because they acted based on, at the very least, arguable probable cause. (Id. at 11-13.) Third, Defendants argue that Plaintiff's substantive due process claim for reckless investigation fails because such a claim does not exist in the Second Circuit. (Id. at 13-14.) Fourth, Defendants claim that Plaintiff has not established that the alleged constitutional deprivation was the direct result of an official policy or custom, as is necessary to hold a municipality directly liable for damages under Section 1983. (Id. at 14-17). Finally, Defendants aver that Plaintiff's false imprisonment claim arises under state law, and asks the court to decline to exercise jurisdiction over it. (Id. at 18.) In their reply, Defendants further argue that Plaintiff's case should be dismissed because she has offered no evidence beyond her own testimony. (Reply) (Dkt. 34) at 1-2.)

Plaintiff opposes the motion. (See Mem. in Opp'n ("Opp'n") (Dkt. 33).)

5

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature

6

of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

III. DISCUSSION

### A. Evidence Beyond Plaintiff's Own Testimony

As an initial matter, Defendants erroneously assert that they are entitled to summary judgment on the grounds that Plaintiff has not submitted any evidence beyond her own testimony. (Reply at 1-2.) The only case Defendants cite to support this argument is Finkelstein v. Mardkha, 495 F. Supp. 2d 329, 342 (S.D.N.Y. 2007). In Finkelstein, the court discussed the strict requirements a plaintiff must meet to successfully survive a motion for summary judgement with regard to a claim that an inventor had been left off a patent.[1] Id. Defendants have not cited, and this court does not know of, any cases suggesting that this heightened requirement applies outside of that particular context.[2] The court therefore declines to grant summary judgment to Defendants on this ground.

### B. Municipal Liability

Plaintiff has not provided sufficient evidence for a reasonable jury to find the City liable for any alleged constitutional violation. While a municipality cannot be held liable pursuant to

---

[1] The law presumes that the inventors listed in a patent are correct, see Finkelstein, 495 F. Supp. 2d at 337, so nonjoinder of an inventor (the claim at issue is Finkelstein) "must be proved by clear and convincing evidence." Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997). As a result of this heightened standard, "[a]lleged co-inventors 'must prove their contribution to the conception of the invention with more than their own testimony concerning the relevant facts.'" ScentSational Technologies, LLC v. PepsiCo, Inc., 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017) (quoting Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1382 (Fed. Cir. 2004)).

[2] Moreover, Plaintiff has, in fact, relied on sworn declarations from Hinds and Robinson in addition to her own testimony. (See Hinds Decl.; Robinson Decl.)

7

42 U.S.C. § 1983 under a theory of respondeat superior, it may be liable for constitutional violations of its employees when such violations result from the municipality's official policy. Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 692-94 (1978). Such a policy may be (1) an express policy; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 168 (1970)); or (3) a decision by a person with "final policymaking authority," City of St. Louis, 485 U.S. at 123 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion)).

A failure to monitor, supervise, or discipline employees can give rise to municipal liability. See Vann v. City of New York, 72 F.3d 1040, 1049-50 (2d Cir. 1995). In such a case, "[a] § 1983 plaintiff . . . may establish the pertinent custom or policy by showing that the municipality, alerted to the possible [constitutional violation], exhibited deliberate indifference." Id. at 1049. "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Id. A plaintiff may demonstrate such an obvious need "through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id. The Supreme Court has cautioned that deliberate indifference "is a stringent standard of fault." Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997)).

Plaintiff's conclusory allegations that the City exhibited deliberate indifference in training and supervision of the involved police officers fall short of this "stringent standard."

8

Although Plaintiff does allege that the City exercised deliberate indifference to Plaintiff's rights (Compl. ¶¶ 10, 14), the complaint does not allege any specific facts in support of this claim. Plaintiff instead broadly states that the City "fail[ed] to take remedial or disciplinary action," against the police officers involved. (Id. ¶ 10.) Even paired with the assertion that the City knew about Munoz's alleged conduct (Pl. Decl. ¶ 17), Plaintiff has failed to allege—much less provide evidence to support—any facts regarding the City's knowledge of an ongoing constitutional problem or its refusal to remedy any such problem. Plaintiff offers no evidence of any other occurrences similar to the one alleged here, and the court is not aware of any additional facts indicating that the need for better protection against constitutional violations should have been obvious to the City. There is, therefore, "'no basis for [a] jury to conclude that [the City's] system was lacking in any way, let alone so deficient as to reflect a policy of deliberate indifference to the civil rights of the citizenry.'" Vann, 72 F.3d at 1050 (quoting Sarus v. Rotundo, 831 F.2d 397, 401 (2d Cir. 1987)). Consequently, the court grants Defendants' motion for summary judgment with respect to Plaintiff's claims against the City.

C. Plaintiff's Section 1983 Claims

In order to state a claim under § 1983, a plaintiff must allege (1) that she has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that this deprivation occurred under color of law. § 1983; accord Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). Here, Plaintiff claims that Defendants, acting under color of law, deprived her of constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including (1) the right to be free from false imprisonment; (2) the right to be free from false

arrest; (4) the right to be free from malicious prosecution; and (5) the right to be free from reckless investigation.

1.   False Imprisonment and False Arrest claims

Courts analyze a Section 1983 false arrest or false imprisonment claim resting on the Fourth Amendment[3] under "the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, a plaintiff must prove four elements to prevail on either claim: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Wright v. Musanti, 887 F.3d 577, 587 (2d Cir. 2018) (citing Broughton v. New York, 335 N.E.2d 310, 314 (N.Y. 1975)).[4]

Defendants argue that the arrest was valid because Munoz had probable cause. (Mem. at 8.) The presence of probable cause is a complete defense to an action for false arrest because "[i]f the arresting officer has probable cause, [then] the confinement is otherwise privileged." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 419 (S.D.N.Y. 2002); see also Wright, 887 F.3d at 587; Broughton, 335 N.E.2d at 315 ("Justification [for the arrest] may be established by showing that the arrest was based on probable cause.").

Probable cause exists when an officer "ha[d] knowledge or reasonably trustworthy information of facts and circumstances that [would be] sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). In making this assessment, courts

---

[3] Defendants characterized Plaintiff's false imprisonment claim as a state law claim, and argue that this court should dismiss it for lack of jurisdiction (assuming that all of Plaintiff's other claims were resolved in their favor). (Mem. at 18.) However, Plaintiffs pled a false imprisonment claim under the Fourth and Fourteenth Amendments, not under state law. (Compl. ¶ 33.)
[4] New York draws no distinction between false arrest and false imprisonment. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment." (citing Jacques v. Sears, Roebuck & Co., 285 N.E.2d 871, 877 (N.Y. 1972))).

view "the totality of the circumstances" and consider the "facts available to the officer at the time of the arrest and immediately before it." Caldarola v. Calabrese, 298 F.3d 156, 162, 166 (2d Cir. 2002) (quotations marks and citations omitted). Probable cause can exist "based upon mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citing Colon v. City of New York, 455 N.E.2d 1248, 1250 (1983)). The inquiry is objective, and a court should not consider the subjective beliefs or motivations of the arresting officer. Whren v. United States, 517 U.S. 806, 812-13 (1996). "At the summary judgment stage, '[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." Ivery v. Baldauf, 284 F. Supp. 3d 426, 434 (W.D.N.Y. 2018) (alteration in original) (quoting Weyant, 101 F.3d at 852).

Defendants argue that Munoz had probable cause to believe that Plaintiff criminally possessed marijuana, and that this probable cause justified the arrest. (Mem. at 5.) Under New York law, the state may prove possession of narcotics either by a defendant's actual physical possession or by her exercise of dominion or control over the narcotics. See N.Y. Penal Law § 10.00(8). A defendant has "constructive possession" if she "exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found . . . ." People v. Manini, 79 N.Y.2d 561, 573 (N.Y. 1992) (internal quotation marks and citations omitted); see also United States v. Facen, 812 F.3d 280, 286-87 (2d Cir. 2016). Courts have found arguable probable cause to arrest a driver of a car when marijuana is found "in the front seat space [of the car] within his easy reach." Elk v. Townson, 839 F. Supp. 1047, 1051 (S.D.N.Y. 1993); see also Costello v. Milano, 20 F. Supp. 3d 406, 421 (S.D.N.Y. 2014).

11

Defendants base their argument for probable cause entirely on the presence of marijuana in public view inside the car:

> Detective Munoz's observation of marijuana in the center cup holder in public view and marijuana on the driver's seat where Plaintiff was seated in public view, permitted him to conclude that [P]laintiff was in possession of marijuana. Therefore, because Detective Munoz could reasonably have imputed constructive possession to Plaintiff, the driver of the vehicle, there was probable cause for Plaintiff's arrest for criminal possession of marijuana.

(Mem. at 8.) However, as noted above, Plaintiff disputes this fact. (Pl. 56.1 ¶¶ 12, 15 (maintaining that there was no marijuana in public view within the car).) Hinds agrees with Plaintiff. (Hinds Decl. ¶ 2 ("[T]here was not any marijuana in public view.").) If there was not marijuana in public view, Defendants' argument for probable cause collapses: Munoz would not have observed marijuana in Plaintiff's car within reach, and would not reasonably have been able to impute constructive possession of marijuana to Plaintiff. Thus, if a jury credits Plaintiff's version of events, it could reasonably find that Munoz did not have probable cause for the arrest. Courts in this circuit have denied dispositive motions on false arrest claims when the probable cause determination turned on similar factual disputes. See, e.g., Ivery, 284 F. Supp. 3d at 435-36 (denying a motion for summary judgment on a false arrest claim because the probable cause determination "largely turn[ed] on an assessment of the parties' credibility regarding the underlying facts" about an altercation between Plaintiff and the arresting officers); Gonzalez v. Del. Cty., No. 3:17-CV-373, 2017 WL 6001823, at *7 (N.D.N.Y. Dec. 4, 2017) (denying a motion to dismiss a false arrest claim because the probable cause determination turned on a factual dispute regarding the content of a statement made by the plaintiff).

Whether marijuana was in public view is a paradigmatic question of material fact. Since the parties dispute it, the court may not resolve this claim at the summary judgment stage.

## 2. Malicious Prosecution

Plaintiff's claim for malicious prosecution also survives. In order to prevail on a § 1983 claim against a state actor for malicious prosecution, Plaintiff must show a violation of her rights under the Fourth Amendment and "must establish the elements of a malicious prosecution claim under state law . . . ." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010). Under New York law, a plaintiff claiming malicious prosecution must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for Defendant's actions." Id. at 160 (citations and internal quotation marks omitted); see also Colon, 455 N.E.2d at 1250 (1983).

Defendants do not appear to dispute the second element—the termination of the relevant criminal proceeding in Plaintiff's favor. The court takes the remaining three elements in turn.

### a. *The Initiation of a Criminal Proceeding Against Plaintiff*

Defendants assert that Munoz is not liable for the initiation of the criminal proceeding against Plaintiff. Defendants are correct that, as a general rule, "[o]nce a criminal Defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the Officer's responsibility for the prosecution." Williams v. City of New York, No. 02-CV-3693, 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003) (citing Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)). But if a plaintiff produces evidence that the prosecutor was "misled or pressured" by the defendant police officers, the officer may be said to have initiated the proceeding. Dufort v. City of New York, 874 F.3d 338, 352 (2d Cir. 2017) (citing Townes, 176 F.3d at 147).

Plaintiff has provided sufficient evidence for a reasonable jury to find that Munoz initiated the criminal proceeding against her. Her testimony, along with Hinds's testimony, indicates that Munoz made false statements to the Kings County District Attorney's Office. (Compare Criminal Compl. (stating that Munoz informed the Kings County District Attorney's Office that he saw Plaintiff in possession of marijuana that was "visible to passers-by"), with Pl. 56.1 ¶¶ 12, 15 (maintaining that there was no marijuana in public view within the car), and (Hinds Decl. ¶ 2 ("[T]here was not any marijuana in public view.").) If a jury credited Plaintiff's evidence, it could reasonably determine that Munoz misled the prosecutor.

### b. Lack of Probable Cause

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted). But as discussed above, see supra Part III.C.1, a reasonable jury could determine that there was no probable cause for the arrest.

### c. Actual Malice as a Motivation for Defendant's Actions

A plaintiff may show malice "by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." Manganiello, 612 F.3d at 163-64 (quoting Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996) (alterations adopted)). A jury may infer malice from the lack of probable cause. See Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003) ("A lack of probable cause generally creates an inference of malice."). "Where, as here, there is a triable issue as to probable cause, there will almost always be a triable issue as to malice . . . ." Chimurenga v. City of New York, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (citing Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994)).

As discussed above, see supra Part III.C.1, there is a triable issue as to probable cause. If a jury were to determine that Munoz did not have probable cause to arrest Plaintiff, it could then reasonably infer malice. Defendants have not pointed to any unique factors here that undermine the propriety of this inference. As such, the court may not rule on the malice question at this stage.

### 3. Reckless Investigation Claim

Plaintiff further claims that Munoz conducted a reckless investigation in violation of her Fourteenth Amendment right to substantive due process. But the Supreme Court has made clear "that 'where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Cty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Albright v. Oliver, 510 U.S. 266, 266 (1994) (plurality opinion of Rehnquist, C.J.)) (alterations adopted). This court may not apply substantive due process analysis if Plaintiff's claims are "covered by" the Fourth Amendment; in other words, if her claims arise from a search or a seizure. See id. at 843 (citing U.S. v. Lanier, 520 U.S. 259, 272 n.7 (1997)); see also Robinson v. Velasquez, 07-CV-3645 (KAM), 2010 WL 1010733, at *5 (E.D.N.Y. 2010) ("[T]he key question in determining whether plaintiff's allegations sound under the Fourth or the Fourteenth Amendment is whether [the plaintiff] was seized within the meaning of the Fourth Amendment at the time he sustained his injuries. If he was seized, then the Fourth Amendment applies." (quotation marks and citations omitted)).

In this case, Plaintiff was seized—whether constitutionally or otherwise. Her claims arise from that seizure, and therefore fall squarely within the ambit of the Fourth Amendment. She cannot raise an independent claim for reckless investigation under the Due Process Clause.[5]

### D. Qualified Immunity

At this stage, Munoz is not entitled to qualified immunity. Qualified immunity protects government officials from civil damages liability under two conditions: "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citing Russo v. City of Bridgeport, 479 F.3d 196, 211 (2d Cir. 2007)); see also Hunter v. Bryant, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (citation and internal quotation marks omitted)). Defendants bear the burden of establishing qualified immunity. Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013).

A police officer is entitled to qualified immunity shielding him from a claim for damages for false arrest or malicious prosecution if either (1) it was objectively reasonable for the officer to believe that there was probable cause for the arrest, or (2) reasonably competent police

---

[5] Other courts in this circuit have declined to consider failure to investigate and reckless investigation claims under substantive due process on similar grounds. See, e.g., Ying Li v. City of New York, 246 F. Supp. 3d 578, 633 (E.D.N.Y. 2017) ("[T]o the extent Plaintiff has a viable failure to investigate claim, it falls under the Fourth Amendment rubric. Here, Plaintiff's claim of failure to investigate, as a practical matter, will be subsumed by all of her other Section 1983 claims." (internal citation omitted)); Newton v. City of New York, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (rejecting the plaintiff's claims for "deliberate (or reckless) failure to conduct a constitutionally adequate investigation" because "there is no constitutional right to an adequate investigation" and holding that, if the plaintiff's allegations were true, "his rights were violated as a result of the malicious prosecution, not a failure to investigate"); Blake v. Race, 487 F. Supp. 2d 187, 212 n.18 (E.D.N.Y. 2007) ("[The plaintiff's] claims are covered by the Fourth Amendment. Accordingly, these allegations of a failure to investigate do not create an independent due process claim . . . ."). Any allegations related to the reckless investigation claim are properly regarded as part of Plaintiff's false arrest and malicious prosecution claims. See Blake, 487 F. Supp. 2d at 212 n.18.

officers could disagree as to whether there was probable cause for the arrest. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991); see also Malley v. Briggs, 475 U.S. 335, 341 (1986). "In deciding whether an officer's conduct was objectively reasonable . . . , we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (citation and quotation marks omitted).

Once again, the resolution of the legal question turns on whether the court credits Plaintiff's or Defendants' version of events. If there was marijuana in public view, it would have been reasonable for the officers to assume that there was probable cause to arrest Plaintiff. Defendants outline this scenario:

> Detective Munoz observed the passenger rolling a marijuana cigarette and further observed marijuana in the center cup holder of the vehicle in public view. . . . [P]laintiff was the driver, and all of the marijuana recovered from the vehicle was recovered in close proximity to the driver's seat. Accordingly, under such circumstances it would be reasonable for Detective Munoz to believe, even if mistakenly, that probable cause existed to arrest Plaintiff for criminal possession of marijuana.

(See Mem. 12-13 (citing Whitton, 90 F. Supp. 2d at 429; Costello, 20 F. Supp. 3d at 416-17).) But Defendants again neglect to acknowledge that Plaintiff disputes these facts. And, as in all legal determinations at the summary judgment stage, this court is "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." Id. Plaintiff has offered evidence indicating that Hinds was not rolling a marijuana cigarette and that there was not marijuana in public view. (Pl. 56.1 ¶¶ 12, 15; Hinds Decl. ¶¶ 2, 10.) She also maintains that there was no marijuana on the driver's seat or in the center cup holder of the car. (Pl. 56.1 ¶¶ 15,

17

28.) Crediting that version of events, Munoz would have had no indication of any crime being committed; under such circumstances, no officer of reasonable competence would believe that the probable cause test had been met. Therefore, Defendants are not entitled to qualified immunity at this stage in the proceeding.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to all of Plaintiff's claims against the City of New York. The Clerk of Court is respectfully directed to terminate the City from this case. The motion is further granted as to Plaintiff's claim for reckless investigation under the Fourteenth Amendment. The motion is denied with respect to Plaintiff's claims for malicious prosecution and false arrest. The parties are directed to contact Magistrate Judge Steven M. Gold's chambers to schedule a conference regarding the next steps in this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      February 8, 2019

NICHOLAS G. GARAUFIS
United States District Judge